to ensure that Blackbaud could comply with any assurances that it could keep this information confidential.

112.    Accordingly, Northern Light was under a duty to adequately perform due diligence or to ensure that Blackbaud's computer systems were sufficiently maintained such that it could keep Plaintiffs' and the Class's PHI secure and confidential before it entered into any agreement with Blackbaud to ensure that it had the capability to keep Plaintiffs' and Class Members' confidential information secure.  Northern Light was also under a duty to monitor Blackbaud's access to any PHI.

113.    Northern Light was under a duty under HIPAA to obtain adequate assurances from Blackbaud that the confidential information that it was submitting to Blackbaud was encrypted, and safe and secure, as Blackbaud was acting as a business associate.

114.    Northern Light breached that duty.

115.    The foreseeable result of Northern Light's failure to perform adequate due diligence upon Blackbaud's ability to secure Plaintiffs' and Class Members' PHI, and/or to monitor its access to such information, was a breach and the potential misuse of that confidential information.

116.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach in an amount to be determined at trial.

117.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Northern Light to, *e.g.,* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit/identity theft monitoring to all Class Members, and any other relief this Court deems just.

28

**For a Second Cause of Action**
**Negligence**
**(On Behalf of Plaintiffs and All Class Members Against Blackbaud)**

118.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 117 above, as if fully set forth herein.

119.     Blackbaud had a duty of care to use reasonable means to secure and safeguard its computer systems—and Plaintiffs' and Class Members' PHI held within it—to prevent disclosure of the information, and to safeguard the information from cyber theft. Blackbaud's duty included a responsibility to implement processes by which it could detect and prevent a breach of its security systems in an reasonably expeditious manner and to give prompt notice to those affected by a data breach and/or ransomware attack.

120.     Blackbaud owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected and safeguarded the PHI of the Class.

121.     Blackbaud's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Blackbaud and Plaintiffs and Class Members, which is recognized by Blackbaud's Policy Notice North America, as well as laws and regulations. Blackbaud was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class Members from a ransomware attack and/or data breach.

122.     Blackbaud had a specific duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . .

29

practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

123.    Blackbaud's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Blackbaud is bound by industry standards to protect confidential PHI.

124.    Blackbaud breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' PHI. The specific negligent acts and omissions committed by Blackbaud include, but are not limited to, the following:

   a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PHI;

   b.    Failing to adequately monitor the security of their networks and systems;

   c.    Failure to periodically ensure that their email system had plans in place to maintain reasonable data security safeguards;

   d.    Allowing unauthorized access to Class Members' PHI;

   e.    Failing to detect in a timely manner that Class Members' PHI had been compromised; and

   f.    Failing to timely notify Class Members about the Data Breach and ransomware attack so those put at risk could take timely and appropriate steps to mitigate the potential for identity theft and other damages.

125.    It was foreseeable that Blackbaud's failure to use reasonable measures to protect Class Members' PHI would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of ransomware attacks and data breaches in the Blackbaud's clients' various industries.

126.    It was therefore foreseeable that the failure to adequately safeguard Class Members' PHI would result in one or more types of injuries to Class Members.

127.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach to be determined at trial.

128.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Blackbaud to, *e.g.,* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members, and any other relief this Court deems just and proper.

**For a Third Cause of Action**
**Breach of Express Contract**
**(On Behalf of Plaintiffs and All Class Members Against Northern Light)**

129.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 128 above, as if fully set forth herein.

130.    Plaintiffs and members of the Class allege that they were the parties to valid and enforceable express contract with Northern Light (including, *inter alia*, the Northern Light Privacy Practices).

131.    The valid and enforceable express contracts that Plaintiffs, Class Members, and Northern Light entered into include Northern Light's promise to protect the PHI that Plaintiffs and Class Members provided to Northern Light.

132.    Under these express contracts, Northern Light promised and was obligated to protect Plaintiffs' and the Class Members' PHI.  In exchange, Plaintiffs, and members of the Class agreed to pay money for these services.

133.    The protection of Plaintiffs' and Class Members' PHI were material aspects of these contracts.

31

134.    Northern Light's Privacy Practices states that: "Northern Light Health protects the privacy and confidentiality of your health information and so does the law."

135.    The Privacy Practices further states that:

"OUR DUTIES REGARDING YOUR HEALTH INFORMATION—The law requires that we:
1. Keep your health information private and secure;
2. Let you know promptly if a breach occurs that compromises the privacy and security of your health information;
3. Follow the practices described in this Notice and give (or offer) you a copy of this Notice; and
4. Not use or share your health information other than as described in this Notice unless you tell us we can in writing."

136.    While the Notice did provide that Northern Light could use health information for fundraising purposes, it said nothing about providing PHI to a vendor whose ability to maintain the confidentiality of that information was questionable, much less to a hacker seeking ransom.

137.    Northern Light's express representations, including, but not limited to, express representations found in its Privacy Policy, formed an express contract requiring Northern Light to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' PHI.

138.    Consumers of healthcare, as well as non-profit donors, value their privacy, the privacy of their dependents, and the ability to keep their PHI associated with healthcare, education, and other institutions private. To customers such as Plaintiffs and Class Members, maintenance and security of PHI that does not adhere to industry standard data security protocols to protect PHI is fundamentally less useful and less valuable than such services that adhere to industry-standard data security. Plaintiffs and Class Members would not have given Northern Light, and otherwise entered into these contracts with Northern Light, without an understanding that their PHI would be safeguarded and protected.

32

139.   A meeting of the minds occurred, as Plaintiffs and members of the Class provided their PHI to Northern Light and expected protection of their PHI.

140.   Plaintiffs and Class Members performed their obligations under the contract, including when they paid for services provided by Northern Light.

141.   Northern Light materially breached its contractual obligation to protect the PHI that it had gathered when it provided such information to Blackbaud without ensuring that Blackbaud had sufficient and adequate security measures necessary to protect Plaintiffs' and the Class Members' PHI, and when it failed to monitor Blackbaud and its system such that Plaintiffs' and the Class Members' PHI was accessed or exfiltrated by unauthorized personnel as part of the Data Breach.

142.   Northern Light materially breached the terms of these express contracts, including, but not limited to, the terms stated in the relevant Privacy Practice.  Northern Light did not comply with industry standards, or otherwise protect Plaintiffs' and the Class Members' Private Information, as set forth above.

143.   The Data Breach was a reasonably foreseeable consequence of Northern Light's actions in breach of these contracts.

144.   As a result of Northern Light's failure to fulfill the data security protections promised in these contracts, Plaintiffs and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value to that described in the contracts.  Plaintiffs and Class Members therefore were damaged in an amount at least equal to the difference in the value of the services with data security protection they paid for and the services they received or provided.

33

145.    Had Northern Light disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, the Plaintiffs, the Class Members, or any reasonable person would not have accepted or purchased services from Northern Light which required providing PHI.

146.    As a direct and proximate result of the Data Breach, Plaintiffs and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure, and publication of their PHI, the loss of control of their PHI, the imminent risk of suffering additional damages in the future, out-of-pocket expenses, and the loss of the benefit of the bargain they had struck with Northern Light.

147.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

### For a Fourth Cause of Action
### Breach of Express Contract
### (On Behalf of Plaintiffs and All Class Members Against Blackbaud)

148.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 147 above, as if fully set forth herein.

149.    Plaintiffs and members of the Class allege that they were the direct or third-party beneficiaries of valid and enforceable express contracts between Northern Light and Blackbaud (including, *inter alia*, Privacy Policy North America).

150.    In fact, Blackbaud's Privacy Policy North America expressly extends to any "constituent, supporter, patient or student of one of [Blackbaud's] customers…"[19]

---

[19] https://www.blackbaud.com/company/privacy-policy/north-america (Last Accessed August 12, 2020).

151.    The valid and enforceable express contracts that Plaintiffs, Class Members, and Northern Light entered into with Blackbaud includes Blackbaud's promise to protect PHI given to Blackbaud and otherwise maintained and secured by Blackbaud.

152.    Under these express contracts, Blackbaud promised and was obligated to protect Plaintiffs' and the Class Members' PHI.  In exchange, Northern Light, Plaintiff, and members of the Class agreed to pay money for these services.

153.    The protection of Plaintiffs' and Class Members' PHI were material aspects of these contracts.

154.    At all relevant times, Blackbaud expressly represented in its Privacy Policy North America as follows:

> While no website can guarantee exhaustive security, we maintain appropriate physical, electronic and procedural safeguards to protect your personal information collected via the website. We protect our databases with various physical, technical and procedural measures and we restrict access to your information by unauthorized persons. We also advise all Blackbaud employees about their responsibility to protect customer data and we provide them with appropriate guidelines for adhering to our company's business ethics standards and confidentiality policies.

155.    Blackbaud's express representations, including, but not limited to, express representations found in its Privacy Policy, formed an express contract requiring Blackbaud to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' PHI.

156.    Consumers of healthcare, as well as non-profit donors, value their privacy, the privacy of their dependents, and the ability to keep their PHI associated with healthcare, education, and other institutions private. To customers such as Plaintiffs and Class Members, maintenance

35

and security of PHI that does not adhere to industry standard data security protocols to protect PHI is fundamentally less useful and less valuable than such services that adhere to industry-standard data security. Plaintiffs and Class Members would not have given Northern Light and Blackbaud their PHI, and otherwise entered into these contracts with Blackbaud and/or Northern Light as a direct or third-party beneficiary without an understanding that their PHI would be safeguarded and protected.

157.   A meeting of the minds occurred, as Plaintiffs and members of the Class provided their PHI to Defendants and expected protection of their PHI.

158.   Plaintiffs and Class Members performed their obligations under the contract, including when they paid for services provided by Northern Light.

159.   Blackbaud materially breached its contractual obligation to protect the PHI that Blackbaud gathered when the information was accessed or exfiltrated by unauthorized personnel as part of the Data Breach.

160.   Blackbaud materially breached the terms of these express contracts, including, but not limited to, the terms stated in the relevant Privacy Policy. Blackbaud did not "maintain appropriate physical, electronic and procedural safeguards to protect your personal information," "protect [its] databases with various physical, technical and procedural measures and [we] restrict access to your information by unauthorized persons," or otherwise adequately train employees.

161.   Blackbaud did not comply with industry standards, or otherwise protect Plaintiffs' and the Class Members' Private Information, as set forth above.

162.   The Data Breach was a reasonably foreseeable consequence of Blackbaud's actions in breach of these contracts.

36

163.     As a result of Blackbaud's failure to fulfill the data security protections promised in these contracts, Plaintiffs and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value to that described in the contracts. Plaintiffs and Class Members therefore were damaged in an amount at least equal to the difference in the value of the services with data security protection they paid for and the services they received or provided.

164.     Had Blackbaud disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, the Plaintiffs, the Class Members, or any reasonable person would not have accepted or purchased services from Blackbaud and/or Northern Light which required providing PHI.

165.     As a direct and proximate result of the Data Breach, Plaintiffs and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure, and publication of their PHI, the loss of control of their Private Information, the imminent risk of suffering additional damages in the future, out-of-pocket expenses, and the loss of the benefit of the bargain they had struck with Defendant.

166.     Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

## For a Fifth Cause of Action
## Breach of Implied Contract
### (On Behalf of Plaintiffs and All Class Members Against Northern Light)

167.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 166 above, as if fully set forth herein.

168. When Plaintiffs and Class Members provided their PHI to Northern Light in exchange for its' services, they entered into implied contracts with Defendant Northern Light pursuant to which Northern Light agreed to reasonably protect such information.

169. Northern Light solicited and invited Class Members to provide their PHI as part of its regular business practices, including through its Privacy Policy. Plaintiffs and Class Members accepted Defendant's offers and provided their PHI to Northern Light.

170. In entering into such implied contracts, Plaintiffs and Class Members reasonably believed and expected that Northern Light's data security practices complied with relevant laws and regulations, and were consistent with industry standards.

171. Plaintiffs and Class Members accepted service from, and paid money to Northern Light, in exchange for which Plaintiffs and Class Members reasonably believed and expected that Northern Light would use part of those funds to maintain adequate data security. Northern Light failed to do so.

172. Plaintiffs and Class Members would not have entrusted their PHI to Northern Light in the absence of the implied contract between them and Northern Light's promise to keep their information secure. Plaintiffs and Class Members would not have entrusted their PHI to Northern Light in the absence of their implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures, and that it would monitor any third party vendor to whom it provided access to Plaintiffs' and Class Members' PHI.

173. Plaintiffs and Class Members fully and adequately performed their obligations under the implied contracts with Northern Light.

174. Northern Light breached its implied contracts with Plaintiffs and Class Members by failing to safeguard and protect their PHI, and failing to monitor Blackbaud.

38

175.   As a direct and proximate result of Northern Light's breaches of the implied contracts, Plaintiffs and Class Members sustained damages as alleged herein.

176.   Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach in an amount to be determined at trial.

177.   Plaintiffs and Class Members are also entitled to injunctive relief requiring Northern Light to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## For a Sixth Cause of Action
### Violation of Maine Uniform Deceptive Trade Practices Act, 10 Me. Rev. Stat. §1212, *Et Seq.*
### (On Behalf of Plaintiffs and Class Members against Defendants)

178.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 177, above as if fully set forth herein.

179.   While in the course of their business, Defendants engaged in deceptive trade practices by making false representations, including their representations that they had adequate computer systems and data security practices to protect PHI, when their computer systems and their practices were inadequate, in violation of 10 Me. Rev. Stat. §1212(E), (G).

180.   Defendants knew or should have known that their computer systems and data security practices were inadequate and engaged in negligent, knowing, and/or willful acts of deception.

181.   Class Members are likely to be damaged by the Defendants' deceptive trade practices.

182.   Class Members seek relief under 10 M.R.S.A. §1213, including, but not limited to, injunctive relief and attorneys' fees.

## **Prayer for Relief**

WHEREFORE, Plaintiffs pray for judgment as follows:

a)  For an Order certifying this action as a class action and appointing Plaintiffs and their Counsel to represent the Class;

b)  For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and the Class Members' PHI, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members or to mitigate further harm;

c)  For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PHI compromised during the Data Breach;

d)  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

e)  Ordering Defendants to pay for not less than seven years of credit/identity theft monitoring services for Plaintiffs and the Class;

f)  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g)  For an award of attorneys' fees and costs;

h)  Pre- and post-judgment interest on any amounts awarded; and

i)  Such other and further relief as this Court may deem just and proper.

40

## Jury Trial Demand

Plaintiffs demands a jury trial on all issues so triable.

Dated: November 14, 2020

Respectfully submitted,

SOLIDARITY LAW, PLLC

By:     Jeffrey Neil Young
        jyoung@solidarity.law
        Solidarity Law, PLLC
        9 Longmeadow Rd.
        Cumberland, ME 04110
        Tel: (207) 844-4243

        Counsel for Plaintiffs and the
        Proposed Class

Howard T. Longman (Pro Hac Vice to be filed)
LongmanLawPC@gmail.com
LONGMAN LAW P.C.
345 Eisenhower Parkway, Suite 1800
Livingston, N.J. 07039
Tel: (973) 994 2315
Fax: (973) 994 2319

Lynda J. Grant (Pro Hac Vice to be filed)
lgrant@grantfirm.com
THEGRANTLAWFIRM, PLLC
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442

41



**Northern Light Health.**
Return Mail Processing
PO Box 589
Claysburg, PA 16625-0589

September 14, 2020

  F7803-L01-0062645 P003 T00147 ********SCH 5-DIGIT 04468
CATHARINE G GIGNAC
45 ROWELL RD
HOLDEN, ME 04429-7259

Dear Catharine G Gignac:

Northern Light Health writes to inform you of a recent incident that may affect the privacy of some of your health information. On Thursday, July 16, 2020, Northern Light Health received notification of a cyber incident from one of our third-party vendors, Blackbaud, Inc. ("Blackbaud"). Blackbaud is a cloud computing provider that offers customer relationship management and financial services tools to numerous philanthropical organizations in various industries, including healthcare. Northern Light Health, along with many other organizations around the world with charitable missions, was among the victims of this Blackbaud cyber incident. Upon receiving notice of the cyber incident, we immediately commenced an investigation to better understand the nature and scope of the incident and any impact on Northern Light Health data. This notice provides information about the Blackbaud incident, our response, and resources available to you to help protect your information from possible misuse, should you feel it necessary to do so.

***What Happened?*** Blackbaud reported that in May 2020, it experienced a ransomware attack during which certain information it maintained for its customers was taken "hostage" by a cybercriminal. Blackbaud reported the incident to law enforcement and worked with forensic consultants to investigate. Following its investigation, Blackbaud notified its customers that a cybercriminal may have accessed or acquired certain Blackbaud customer data before Blackbaud locked the unknown actor out of the environment on May 20, 2020. Upon learning of the Blackbaud incident, Northern Light Health immediately began to determine what, if any, sensitive Northern Light Health data was potentially involved. This investigation included working diligently to gather further information from Blackbaud to understand the scope of the incident. On July 30, 2020, Northern Light Health received further information from Blackbaud that allowed us to determine that the information affected included some limited protected health information.

***What Information Was Involved?*** Our investigation determined that the impacted Blackbaud systems contained your name, address, phone number, email address, date of birth, gender, the Northern Light Hospital(s) (and possibly the department(s)) where you have received medical care, and the associated date(s) of service.

***What Information Was NOT Involved?*** No credit card information or bank account information was accessed by the cybercriminal. No Acadia Hospital information was involved in this incident.

***What Has Blackbaud Done?*** Blackbaud reported that it paid the "ransom" demanded by the cybercriminal. According to Blackbaud, upon receipt of this payment this criminal stated that they deleted the copy of the data the criminal removed. Further, Blackbaud has hired an Internet expert that will continuously monitor online activity for the presence of any of the ransomed information.

*What We Are Doing.* The confidentiality, privacy, and security of your information is among our highest priorities, and we take this incident very seriously. As part of our ongoing commitment to the security of your information, we are working to review our existing policies and procedures regarding our third-party vendors and are working with Blackbaud to evaluate additional measures and safeguards to protect against this type of incident in the future. We also provided the legally required notification of this incident to the United States Department of Health and Human Services.

*What You Can Do.* We recommend you remain vigilant for attempts to obtain sensitive information from you using social engineering. This is when someone requests you provide sensitive information such as bank account information or Social Security number by using information about your recent medical visit in an attempt to show the request is legitimate. We also encourage you to review the enclosed *Steps You Can Take to Help Protect Your Information.* There you will find general information on what you can do to help protect your personal information.

We understand that you may have questions about the Blackbaud incident that are not addressed in this letter. If you have additional questions, please call our dedicated assistance line at (877) 339-1548 between the hours of 9 am to 11 pm ET Monday - Friday and 11 am to 8 pm ET Saturday - Sunday and be prepared to reference Engagement Number DB21847. You may also write to Northern Light Health at 43 Whiting Hill Road Suite 500, Brewer, Maine 04412.

We regret the inconvenience or concern this incident may have caused.

Sincerely,

Matthew Weed
Senior Vice President & Chief Strategy Officer

F7803-L0

STEPS YOU CAN TAKE TO HELP PROTECT YOUR INFORMATION

## Monitor Accounts

In general, we encourage you to remain vigilant against incidents of identity theft and fraud, to review your account statements, and to monitor your credit reports for suspicious activity. Under U.S. law you are entitled to one free credit report annually from each of the three major credit reporting bureaus. To order your free credit report, visit www.annualcreditreport.com or call, toll-free, 1-877-322-8228. You may also contact the three major credit bureaus directly to request a free copy of your credit report.

You have the right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit. Pursuant to federal law, you cannot be charged to place or lift a security freeze on your credit report. Should you wish to place a security freeze, please contact the major consumer reporting agencies listed below:

| Experian | TransUnion | Equifax |
|---|---|---|
| P.O. Box 9554 | P.O. Box 160 | P.O. Box 105788 |
| Allen, TX 75013 | Woodlyn, PA 19094 | Atlanta, GA 30348-5788 |
| 1-888-397-3742 | 1-888-909-8872 | 1-800-685-1111 |
| www.experian.com/freeze/center.html | www.transunion.com/credit-freeze | www.equifax.com/personal/credit-report-services |

In order to request a security freeze, you will need to provide the following information:

1.  Your full name (including middle initial as well as Jr., Sr., II, III, etc.);
2.  Social Security number;
3.  Date of birth;
4.  If you have moved in the past five (5) years, provide the addresses where you have lived over the prior five years;
5.  Proof of current address, such as a current utility bill or telephone bill;
6.  A legible photocopy of a government-issued identification card (state driver's license or ID card, military identification, etc.);
7.  If you are a victim of identity theft, include a copy of either the police report, investigative report, or complaint to a law enforcement agency concerning identity theft.

As an alternative to a security freeze, you have the right to place an initial or extended "fraud alert" on your file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting seven years. Should you wish to place a fraud alert, please contact any one of the agencies listed below:

| Experian | TransUnion | Equifax |
|---|---|---|
| P.O. Box 9554 | P.O. Box 2000 | P.O. Box 105069 |
| Allen, TX 75013 | Chester, PA 19016 | Atlanta, GA 30348 |
| 1-888-397-3742 | 1-800-680-7289 | 1-888-766-0008 |
| www.experian.com/fraud/center.html | www.transunion.com/fraud-victim-resource/place-fraud-alert | www.equifax.com/personal/credit-report-services |

**Additional Information**

You can further educate yourself regarding identity theft, fraud alerts, security freezes, and the steps you can take to protect yourself by contacting the consumer reporting agencies, the Federal Trade Commission, or your state Attorney General.

The Federal Trade Commission can be reached at: 600 Pennsylvania Avenue NW, Washington, DC 20580, www.identitytheft.gov, 1-877-ID-THEFT (1-877-438-4338); TTY: 1-866-653-4261.   The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them.  You can obtain further information on how to file such a complaint by way of the contact information listed above.  You have the right to file a police report if you ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, you will likely need to provide some proof that you have been a victim.  Instances of known or suspected identity theft should also be reported to law enforcement and your state Attorney General.

**For Rhode Island Residents**: The Rhode Island Attorney General can be reached at: 150 South Main Street, Providence, Rhode Island 02903; www.riag.ri.gov; 1-401-274-4400. Under Rhode Island law, you have the right to obtain any police report filed in regard to this incident.  There are 487 Rhode Island residents impacted by this incident.



**Northern Light Health.**
Return Mail Processing
PO Box 589
Claysburg, PA 16625-0589

September 14, 2020

F7803-L01-0062644 P003 T00147 ********SCH 5-DIGIT 04468
JEREMY E GIGNAC
45 ROWELL RD
HOLDEN, ME 04429-7259

Dear Jeremy E Gignac:

Northern Light Health writes to inform you of a recent incident that may affect the privacy of some of your health information. On Thursday, July 16, 2020, Northern Light Health received notification of a cyber incident from one of our third-party vendors, Blackbaud, Inc. ("Blackbaud"). Blackbaud is a cloud computing provider that offers customer relationship management and financial services tools to numerous philanthropical organizations in various industries, including healthcare. Northern Light Health, along with many other organizations around the world with charitable missions, was among the victims of this Blackbaud cyber incident. Upon receiving notice of the cyber incident, we immediately commenced an investigation to better understand the nature and scope of the incident and any impact on Northern Light Health data. This notice provides information about the Blackbaud incident, our response, and resources available to you to help protect your information from possible misuse, should you feel it necessary to do so.

*What Happened?* Blackbaud reported that in May 2020, it experienced a ransomware attack during which certain information it maintained for its customers was taken "hostage" by a cybercriminal. Blackbaud reported the incident to law enforcement and worked with forensic consultants to investigate. Following its investigation, Blackbaud notified its customers that a cybercriminal may have accessed or acquired certain Blackbaud customer data before Blackbaud locked the unknown actor out of the environment on May 20, 2020. Upon learning of the Blackbaud incident, Northern Light Health immediately began to determine what, if any, sensitive Northern Light Health data was potentially involved. This investigation included working diligently to gather further information from Blackbaud to understand the scope of the incident. On July 30, 2020, Northern Light Health received further information from Blackbaud that allowed us to determine that the information affected included some limited protected health information.

*What Information Was Involved?* Our investigation determined that the impacted Blackbaud systems contained your name, address, phone number, email address, date of birth, gender, the Northern Light Hospital(s) (and possibly the department(s)) where you have received medical care, and the associated date(s) of service.

*What Information Was NOT Involved?* No credit card information or bank account information was accessed by the cybercriminal. No Acadia Hospital information was involved in this incident.

*What Has Blackbaud Done?* Blackbaud reported that it paid the "ransom" demanded by the cybercriminal. According to Blackbaud, upon receipt of this payment this criminal stated that they deleted the copy of the data the criminal removed. Further, Blackbaud has hired an Internet expert that will continuously monitor online activity for the presence of any of the ransomed information.

F7803-

*What We Are Doing.* The confidentiality, privacy, and security of your information is among our highest priorities, and we take this incident very seriously. As part of our ongoing commitment to the security of your information, we are working to review our existing policies and procedures regarding our third-party vendors and are working with Blackbaud to evaluate additional measures and safeguards to protect against this type of incident in the future. We also provided the legally required notification of this incident to the United States Department of Health and Human Services.

*What You Can Do.* We recommend you remain vigilant for attempts to obtain sensitive information from you using social engineering. This is when someone requests you provide sensitive information such as bank account information or Social Security number by using information about your recent medical visit in an attempt to show the request is legitimate. We also encourage you to review the enclosed *Steps You Can Take to Help Protect Your Information*. There you will find general information on what you can do to help protect your personal information.

We understand that you may have questions about the Blackbaud incident that are not addressed in this letter. If you have additional questions, please call our dedicated assistance line at (877) 339-1548 between the hours of 9 am to 11 pm ET Monday - Friday and 11 am to 8 pm ET Saturday - Sunday and be prepared to reference Engagement Number DB21847. You may also write to Northern Light Health at 43 Whiting Hill Road Suite 500, Brewer, Maine 04412.

We regret the inconvenience or concern this incident may have caused.

Sincerely,

Matthew Weed
Senior Vice President & Chief Strategy Officer

STEPS YOU CAN TAKE TO HELP PROTECT YOUR INFORMATION

### Monitor Accounts

In general, we encourage you to remain vigilant against incidents of identity theft and fraud, to review your account statements, and to monitor your credit reports for suspicious activity. Under U.S. law you are entitled to one free credit report annually from each of the three major credit reporting bureaus. To order your free credit report, visit www.annualcreditreport.com or call, toll-free, 1-877-322-8228. You may also contact the three major credit bureaus directly to request a free copy of your credit report.

You have the right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit. Pursuant to federal law, you cannot be charged to place or lift a security freeze on your credit report. Should you wish to place a security freeze, please contact the major consumer reporting agencies listed below:

| Experian | TransUnion | Equifax |
|---|---|---|
| P.O. Box 9554 | P.O. Box 160 | P.O. Box 105788 |
| Allen, TX 75013 | Woodlyn, PA 19094 | Atlanta, GA 30348-5788 |
| 1-888-397-3742 | 1-888-909-8872 | 1-800-685-1111 |
| www.experian.com/freeze/center.html | www.transunion.com/credit-freeze | www.equifax.com/personal/credit-report-services |

In order to request a security freeze, you will need to provide the following information:

1. Your full name (including middle initial as well as Jr., Sr., II, III, etc.);
2. Social Security number;
3. Date of birth;
4. If you have moved in the past five (5) years, provide the addresses where you have lived over the prior five years;
5. Proof of current address, such as a current utility bill or telephone bill;
6. A legible photocopy of a government-issued identification card (state driver's license or ID card, military identification, etc.);
7. If you are a victim of identity theft, include a copy of either the police report, investigative report, or complaint to a law enforcement agency concerning identity theft.

As an alternative to a security freeze, you have the right to place an initial or extended "fraud alert" on your file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting seven years. Should you wish to place a fraud alert, please contact any one of the agencies listed below:

| Experian | TransUnion | Equifax |
|---|---|---|
| P.O. Box 9554 | P.O. Box 2000 | P.O. Box 105069 |
| Allen, TX 75013 | Chester, PA 19016 | Atlanta, GA 30348 |
| 1-888-397-3742 | 1-800-680-7289 | 1-888-766-0008 |
| www.experian.com/fraud/center.html | www.transunion.com/fraud-victim-resource/place-fraud-alert | www.equifax.com/personal/credit-report-services |



**Additional Information**

You can further educate yourself regarding identity theft, fraud alerts, security freezes, and the steps you can take to protect yourself by contacting the consumer reporting agencies, the Federal Trade Commission, or your state Attorney General.

The Federal Trade Commission can be reached at: 600 Pennsylvania Avenue NW, Washington, DC 20580, www.identitytheft.gov, 1-877-ID-THEFT (1-877-438-4338); TTY: 1-866-653-4261.   The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them.  You can obtain further information on how to file such a complaint by way of the contact information listed above.  You have the right to file a police report if you ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, you will likely need to provide some proof that you have been a victim.  Instances of known or suspected identity theft should also be reported to law enforcement and your state Attorney General.

**For Rhode Island Residents**: The Rhode Island Attorney General can be reached at: 150 South Main Street, Providence, Rhode Island 02903; www.riag.ri.gov; 1-401-274-4400. Under Rhode Island law, you have the right to obtain any police report filed in regard to this incident.  There are 487 Rhode Island residents impacted by this incident.



**Northern Light Health.**
Return Mail Processing
PO Box 589
Claysburg, PA 16625-0589

September 14, 2020

F7803-L01-0062643 P003 T00147 ********SCH 5-DIGIT 04468
JACOB R GIGNAC
45 ROWELL RD
HOLDEN, ME 04429-7259

Dear Jacob R Gignac:

Northern Light Health writes to inform you of a recent incident that may affect the privacy of some of your health information. On Thursday, July 16, 2020, Northern Light Health received notification of a cyber incident from one of our third-party vendors, Blackbaud, Inc. ("Blackbaud"). Blackbaud is a cloud computing provider that offers customer relationship management and financial services tools to numerous philanthropical organizations in various industries, including healthcare. Northern Light Health, along with many other organizations around the world with charitable missions, was among the victims of this Blackbaud cyber incident. Upon receiving notice of the cyber incident, we immediately commenced an investigation to better understand the nature and scope of the incident and any impact on Northern Light Health data. This notice provides information about the Blackbaud incident, our response, and resources available to you to help protect your information from possible misuse, should you feel it necessary to do so.

***What Happened?*** Blackbaud reported that in May 2020, it experienced a ransomware attack during which certain information it maintained for its customers was taken "hostage" by a cybercriminal. Blackbaud reported the incident to law enforcement and worked with forensic consultants to investigate. Following its investigation, Blackbaud notified its customers that a cybercriminal may have accessed or acquired certain Blackbaud customer data before Blackbaud locked the unknown actor out of the environment on May 20, 2020. Upon learning of the Blackbaud incident, Northern Light Health immediately began to determine what, if any, sensitive Northern Light Health data was potentially involved. This investigation included working diligently to gather further information from Blackbaud to understand the scope of the incident. On July 30, 2020, Northern Light Health received further information from Blackbaud that allowed us to determine that the information affected included some limited protected health information.

***What Information Was Involved?*** Our investigation determined that the impacted Blackbaud systems contained your name, address, phone number, email address, date of birth, gender, the Northern Light Hospital(s) (and possibly the department(s)) where you have received medical care, and the associated date(s) of service.

***What Information Was NOT Involved?*** No credit card information or bank account information was accessed by the cybercriminal. No Acadia Hospital information was involved in this incident.

***What Has Blackbaud Done?*** Blackbaud reported that it paid the "ransom" demanded by the cybercriminal. According to Blackbaud, upon receipt of this payment this criminal stated that they deleted the copy of the data the criminal removed. Further, Blackbaud has hired an Internet expert that will continuously monitor online activity for the presence of any of the ransomed information.

F7803

*What We Are Doing.* The confidentiality, privacy, and security of your information is among our highest priorities, and we take this incident very seriously. As part of our ongoing commitment to the security of your information, we are working to review our existing policies and procedures regarding our third-party vendors and are working with Blackbaud to evaluate additional measures and safeguards to protect against this type of incident in the future. We also provided the legally required notification of this incident to the United States Department of Health and Human Services.

*What You Can Do.* We recommend you remain vigilant for attempts to obtain sensitive information from you using social engineering. This is when someone requests you provide sensitive information such as bank account information or Social Security number by using information about your recent medical visit in an attempt to show the request is legitimate. We also encourage you to review the enclosed *Steps You Can Take to Help Protect Your Information*. There you will find general information on what you can do to help protect your personal information.

We understand that you may have questions about the Blackbaud incident that are not addressed in this letter. If you have additional questions, please call our dedicated assistance line at (877) 339-1548 between the hours of 9 am to 11 pm ET Monday - Friday and 11 am to 8 pm ET Saturday - Sunday and be prepared to reference Engagement Number DB21847. You may also write to Northern Light Health at 43 Whiting Hill Road Suite 500, Brewer, Maine 04412.

We regret the inconvenience or concern this incident may have caused.

Sincerely,

Matthew Weed
Senior Vice President & Chief Strategy Officer

*STEPS YOU CAN TAKE TO HELP PROTECT YOUR INFORMATION*

### Monitor Accounts

In general, we encourage you to remain vigilant against incidents of identity theft and fraud, to review your account statements, and to monitor your credit reports for suspicious activity. Under U.S. law you are entitled to one free credit report annually from each of the three major credit reporting bureaus. To order your free credit report, visit www.annualcreditreport.com or call, toll-free, 1-877-322-8228. You may also contact the three major credit bureaus directly to request a free copy of your credit report.

You have the right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit. Pursuant to federal law, you cannot be charged to place or lift a security freeze on your credit report. Should you wish to place a security freeze, please contact the major consumer reporting agencies listed below:

| Experian | TransUnion | Equifax |
|---|---|---|
| P.O. Box 9554 | P.O. Box 160 | P.O. Box 105788 |
| Allen, TX 75013 | Woodlyn, PA 19094 | Atlanta, GA 30348-5788 |
| 1-888-397-3742 | 1-888-909-8872 | 1-800-685-1111 |
| www.experian.com/freeze/center.html | www.transunion.com/credit-freeze | www.equifax.com/personal/credit-report-services |

In order to request a security freeze, you will need to provide the following information:

1. Your full name (including middle initial as well as Jr., Sr., II, III, etc.);
2. Social Security number;
3. Date of birth;
4. If you have moved in the past five (5) years, provide the addresses where you have lived over the prior five years;
5. Proof of current address, such as a current utility bill or telephone bill;
6. A legible photocopy of a government-issued identification card (state driver's license or ID card, military identification, etc.);
7. If you are a victim of identity theft, include a copy of either the police report, investigative report, or complaint to a law enforcement agency concerning identity theft.

As an alternative to a security freeze, you have the right to place an initial or extended "fraud alert" on your file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting seven years. Should you wish to place a fraud alert, please contact any one of the agencies listed below:

| Experian | TransUnion | Equifax |
|---|---|---|
| P.O. Box 9554 | P.O. Box 2000 | P.O. Box 105069 |
| Allen, TX 75013 | Chester, PA 19016 | Atlanta, GA 30348 |
| 1-888-397-3742 | 1-800-680-7289 | 1-888-766-0008 |
| www.experian.com/fraud/center.html | www.transunion.com/fraud-victim-resource/place-fraud-alert | www.equifax.com/personal/credit-report-services |

## Additional Information

You can further educate yourself regarding identity theft, fraud alerts, security freezes, and the steps you can take to protect yourself by contacting the consumer reporting agencies, the Federal Trade Commission, or your state Attorney General.

The Federal Trade Commission can be reached at: 600 Pennsylvania Avenue NW, Washington, DC 20580, www.identitytheft.gov, 1-877-ID-THEFT (1-877-438-4338); TTY: 1-866-653-4261.   The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them.  You can obtain further information on how to file such a complaint by way of the contact information listed above.  You have the right to file a police report if you ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, you will likely need to provide some proof that you have been a victim.  Instances of known or suspected identity theft should also be reported to law enforcement and your state Attorney General.

**For Rhode Island Residents**: The Rhode Island Attorney General can be reached at: 150 South Main Street, Providence, Rhode Island 02903; www.riag.ri.gov; 1-401-274-4400. Under Rhode Island law, you have the right to obtain any police report filed in regard to this incident.  There are 487 Rhode Island residents impacted by this incident.

F7603-L